IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 19, 2016 Session

IN RE A.B. ET AL.

Appeal from the Juvenile Court for Cumberland County
No. 2014-JV-4661  Larry M. Warner, Judge

No. E2016-00504-COA-R3-PT-FILED-JANUARY 11, 2017

This is a termination of parental rights case.  On December 17, 2014, the Department of Children's Services filed a petition to terminate the parental rights of M.L.F. (Mother) and H.W.B. (Father) with respect to their two children, A.M.B. (Child 1) and O.R.F. (Child 2) (collectively the Children).  As to Mother, the trial court found clear and convincing evidence of three grounds supporting termination – abandonment by failure to establish a suitable home, substantial noncompliance with permanency plans, and persistence of conditions.[1]  By the same quantum of proof, the trial court found that termination of Mother's rights is in the best interest of the Children.  As to Father, the trial court held that DCS had failed to prove, by clear and convincing evidence, the alleged grounds of abandonment by wanton disregard, substantial noncompliance with permanency plans, and grounds applicable to a putative father.[2]  Consequently, the court declined to terminate Father's parental rights.  Mother and DCS appeal.  We reverse the trial court's holding as to Father and affirm the court's termination of Mother's rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Affirmed in Part and Reversed in Part; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

---

[1] In its petition, DCS also sought to terminate Mother's rights on the ground of failure to support, pursuant to Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(i).  This ground was not addressed at trial and is not discussed in the parties' briefs.

[2] In addition to these grounds, DCS also sought to terminate Father's rights on the ground of persistence of conditions, pursuant to Tenn. Code Ann. § 36-1-113(g)(3).  This ground is not addressed in the record.

Herbert H. Slatery III, Attorney General and Reporter, Andrée S. Blumstein, Solicitor General, and Kathryn A. Baker, Assistant Attorney General, Nashville, Tennessee, for the appellant, Tennessee Department of Children's Services.

Sherrill Rhea, Crossville, Tennessee, for appellee, M.L.F.

Jonathan R. Hamby, Crossville, Tennessee, for appellee, H.W.B.

**OPINION**

**I.**

Child 1 was born on February 10, 2009, and Child 2 was born on July 9, 2010. In 2009, Father was on probation for a drug charge to which he had pleaded guilty. In July 2009, he was found guilty of violating his probation. In March 2010, Father was arrested for driving on a suspended license. When Father was arrested, he had $3,795 in cash with him. After Father bonded out of jail, the police investigated him due to their belief that his cash was "drug money." This investigation led to the discovery of Oxycodone in a vehicle on his property. Father was arrested for violation of probation. He was charged with possession for sale of a schedule II drug and possession of a schedule II drug for delivery. He has been continuously incarcerated since April 5, 2010. On October 8, 2010, Father pleaded guilty to a January 2010 charge of theft of property over $1,000. He also pleaded guilty to the charges of possession of a schedule II drug for sale and for delivery. The criminal court sentenced him to two years for the theft charge and six years for the drug offenses. In addition to the state charges, Father was indicted on federal charges for conspiracy to transport and deliver and trafficking of Oxycodone, Alprazolam, and Hydocodone. Father pleaded guilty to these federal charges, receiving a seventy-five month sentence.

In January 2014, DCS received a referral that Mother was using drugs. Mother had previously been in a drug rehab program, and she agreed to return to the program. On February 6, 2014, DCS contacted a rehab program on Mother's behalf. That same day, Mother was arrested on charges of public intoxication, simple possession of a schedule IV drug, and the manufacture, delivery, and sale of methamphetamine.

Following Mother's arrest, DCS filed a petition to declare the Children dependent and neglected and for emergency temporary legal custody. The trial court entered a protective custody order and placed the children in the custody of DCS due to dependency and neglect. The Children were placed with a foster family and have been with that family since their placement.

2

DCS created multiple permanency plans for Mother and Father. The trial court ratified permanency plans on May 23, 2014, October 3, 2014, and January 9, 2015. Each plan had as its goal return to parents/adoption. These plans sought to ensure that, if the Children returned to Mother or Father, they would have a stable home environment, drug free parents, an environment free from legal stressors, and appropriate parenting.

On December 17, 2014, DCS filed a petition to terminate the parental rights of both parents. In its petition, DCS alleged the following grounds for termination of Mother's rights: (1) abandonment due to her failure to support the Children pursuant to Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A); (2) abandonment as a result of Mother's failure to provide a suitable home pursuant to Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(ii); (3) Mother's substantial noncompliance with permanency plans pursuant to Tenn. Code Ann. § 36-1-113(g)(2); and (4) persistence of conditions pursuant to Tenn. Code Ann. § 36-1-113(g)(3). In the same petition, DCS alleged grounds for termination of Father's rights: (1) failure to establish paternity pursuant to Tenn. Code Ann. § 36-1-113(g)(9); (2) abandonment by wanton disregard pursuant to Tenn. Code Ann. § 36-1-113(g)(1) and 36-1-102(1)(A)(iv); (3) substantial noncompliance with permanency plans pursuant to Tenn. Code Ann. § 36-1-113(g)(2); and (4) persistence of conditions pursuant to Tenn. Code Ann. § 36-1-113(g)(3). DCS asserted that termination of the parents' rights is in the best interest of the Children.

On February 10, 2016, the trial court entered its order terminating Mother's parental rights after finding clear and convincing evidence supporting three grounds alleged by DCS. In addition, the trial court held that there was clear and convincing evidence that termination of Mother's rights was in the Children's best interest. As to Father, the trial court held that DCS failed to prove by clear and convincing evidence that one or more grounds existed to terminate his rights. Mother and DCS appeal.

## II.

DCS filed a notice of appeal on March 8, 2016 raising the following issues, as taken verbatim from its brief:

> 1. Whether the juvenile court erred in finding that the Department of Children's Services had not proven by clear and convincing evidence that grounds exist to terminate Father's parental rights.
>
> 2. Whether the Department of Children's Services presented clear and convincing evidence that termination of Father's parental rights is in the best interest of the Children[.]

Mother filed a notice of appeal on March 9, 2016 raising the following issues, as taken verbatim from her brief:

> 1.   Whether the juvenile court erred in finding that the Department of Children's Services had proven by clear and convincing evidence that grounds exist to terminate Mother's parental rights.
>
> 2.   Whether the juvenile court erred by finding clear and convincing evidence that termination of Mother's parental rights was in the Children's best interest.

### III.

A parent has a fundamental right, based on both the federal and state constitutions, to the care, custody, and control of his or her child. *Stanley v. Ill.*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996). While this right is fundamental, it is not absolute. The State may interfere with a parent's rights in certain circumstances. *In re Angela E.*, 303 S.W.3d at 250. Our legislature has listed the grounds upon which termination proceedings may be brought. Tenn. Code Ann. § 36-1-113(g). Termination proceedings are statutory, *In re Angela E.*, 303 S.W.3d at 250; *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004), and a parent's rights may be terminated only where a statutory basis exists. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In the Matter of M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

To terminate parental rights, a court must determine by clear and convincing evidence the existence of at least one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citations omitted). Unlike the preponderance of the evidence standard, "[e]vidence satisfying the clear and convincing standard establishes that the truth of the facts asserted is highly probable." *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005).

Once a ground for termination is established by clear and convincing evidence, the trial court conducts a best interest analysis. *In re Angela E.*, 303 S.W.3d at 251 (citing *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005)). "The best interest[ ] analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." *Id.* at 254. The existence of a ground for termination "does not inexorably lead to the conclusion that termination of a parent's

4

rights is in the best interest of the child." ***In re C.B.W.***, No. M2005-01817-COA-R3-PT, 2006 WL 1749534, at \*6 (Tenn. Ct. App., filed June 26, 2006).

We are required to review all of the trial court's findings with respect to grounds and best interest. ***In re Carrington***, 483 S.W.3d 507, 525-26 (Tenn. 2016) ("[W]e hold that in an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interest[ ], regardless of whether the parent challenges these findings on appeal.")

> The Supreme Court has recently delineated our standard of review:
>> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

***Id.*** at 523-24 (internal citations omitted). "When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to . . . the trial court's factual findings." ***In re Adoption of S.T.D.***, No. E2007-01240-COA-R3-PT, 2007 WL 3171034, at \*4 (Tenn. Ct. App., filed Oct. 30, 2007) (citing ***Seals v. England/Corsair Upholstery Mfg. Co., Inc.***, 984 S.W.2d 912, 915 (Tenn. 1999)).

## IV.

This court has previously stated that,

> [t]he ultimate goal of every proceeding involving the care and custody of a child is to ascertain and promote the child's best

5

interests. However, as important as these interests are, they do not dominate every phase of a termination of parental rights proceeding. The best interests of the child do not become the paramount consideration until the trial court has determined that the parent is unfit based on clear and convincing evidence of one or more of the grounds for termination listed in Tenn. Code Ann. § 36-1-113(g).

*In re Audrey S.*, 182 S.W.3d at 877. In the present action, the trial court found, by clear and convincing evidence, three grounds to terminate Mother's rights. The trial court, however, determined that DCS failed to prove by clear and convincing evidence that Father's rights should be terminated. As previously stated in this opinion, we are required to review all of the trial court's findings with respect to grounds and best interest "regardless of whether the parent challenges the findings on appeal." *In re Carrington*, 483 S.W.3d at 525-26.

## V.

### A.

When analyzing the first ground for terminating Mother's rights — failure to establish a suitable home — the trial court concluded the following:

> [Mother] has abandoned [the Children] pursuant to Tenn. Code Ann. § 36-1-113(g)(1) and Tenn. Code Ann. § 36-1-102(1)(A)(ii) in that for a period of four (4) months following the removal of the children from the parents, the Department has made reasonable efforts to assist the mother . . . to establish a suitable home for the children, but the mother has made no reasonable efforts to provide a suitable home and has demonstrated a lack of concern for the children to such a degree that it appears unlikely that [Mother] will be able to provide a suitable home for the children at an early date.
>
> The reasonable efforts of the Department made in the first four months include: . . . determining if the parent has insurance or TNCare coverage for medical, mental health, and alcohol and drug treatment; reviewing the Criteria and Procedure for Termination of Parental Rights with parent; . . . providing the parent with a monthly list of items the children need such as food, clothing, and toys; . . . obtaining funding for and scheduling therapeutic visitation; . . . assisting the parent in scheduling an alcohol and drug consultation . . . ;

6

assisting the parent in scheduling a psychological evaluation appointment; . . . [and] attempting and making visits to the parent's home. . . .

The mother's lack of reasonable efforts include: failure to maintain housing resulting in her being evicted and residing with friends; . . . failing to obtain or provide a list of efforts to obtain a legal means of income; . . . missing several visits with the children and being late to others; . . . missing appointments for alcohol and drug assessments that were scheduled by case manager; testing positive on drug screens for medication that was not prescribed to her; . . . and missing the first scheduled psychological evaluation and refusing to go . . . when . . . it was rescheduled.

Our review of the record demonstrates that the evidence does not preponderate against these factual findings by the trial court. Tenn. Code Ann. § 36-1-102(1)(A)(ii) explains that, for the purposes of terminating parental rights, "abandonment" means:

The child has been removed from the home of the parent . . . as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child, . . . and the child was placed in the custody of the department . . . , that the . . . court where the termination of parental rights petition is filed finds, that the department . . . made reasonable efforts to prevent removal of the child . . . ; and for a period of four (4) months following the removal, the department . . . has made reasonable efforts to assist the parent . . . to establish a suitable home for the child, but that the parent . . . ha[s] made no reasonable efforts to provide a suitable home and ha[s] demonstrated a lack of concern for the child to such a degree that it appears unlikely that [she] will be able to provide a suitable home for the child at an early date.

In the present action, the Children were placed in DCS custody on February 6, 2014. As a result, the four-month period we must examine in order to establish abandonment by a failure to provide a suitable home is February 7, 2014 to June 6, 2014. The record reflects that during these four months, DCS (1) provided Mother with the contact information for her case manager and team leader; (2) advised Mother of the availability of assistance seeking employment; (3) scheduled and arranged transportation and supervision for visitation with the Children; (4) discussed permanency plans with Mother; (5) coordinated scheduling and attending an alcohol and drug consultation; (6)

7

observed and documented parenting problems and made recommendations for addressing those problems; (7) administered drug screens and discussed positive results with Mother; and (8) attempted to transport Mother to her psychological evaluation. Meanwhile, during that same period, Mother (1) failed to maintain housing; (2) missed appointments for drug and alcohol assessments; (3) failed to maintain legal means of income; (4) failed or refused drug screens; and (5) missed psychological evaluations.

In light of the above facts, we hold, as a matter of law, that the evidence clearly and convincingly establishes that Mother has abandoned the Children by failing to provide a suitable home for them.

## B.

The trial court made the following findings with respect to Mother's substantial noncompliance with permanency plans:

> [Mother] has not substantially complied with the provisions of the permanency plans, and therefore her parental rights should be terminated pursuant to Tenn. Code Ann. § 36-1-113(g)(2).
>
> *     *     *
>
> The requirements of the permanency plans are all reasonably related to remedying the conditions that necessitate foster care. All of the permanency plans clearly identify in writing the parent's statement of responsibilities as being both the desired outcomes and action steps listed in the plan.
>
> [Mother] has not completed the following requirements in the permanency plan: she has . . . not provided monthly receipts of rent and utilities, she has not obtained a legal means of income or provided a list of employment efforts, she did not complete the application process with Vocational Rehabilitation, she has missed several visits with the children and was late to many more, . . . she missed several appointments scheduled for an alcohol and drug consultation and has not followed up with any alcohol and drug treatment, she has tested positive for medications which were not prescribed, . . . she has appeared at visitation with visible track marks on her arms, . . . she missed her appointment for a psychological evaluation and refused to attend the

8

rescheduled appointment, [and] she has incurred new legal charges in September 2014.

The Department made reasonable efforts to assist [Mother] in complying with the requirements in the permanency plan by providing to parent case manager and team leader's business cards with name, office address, office telephone number, state cell phone number, and email address and instructing parent to contact case manager or team leader if case manager cannot be reached at any time the parent needs assistance; . . . scheduling visitation between the parent and making sure the parent knows the time, date, and place of the visitation; . . . arranging transportation to the visitation for the child; . . . arranging a regular day and time for telephone visitation between the parent and the child; . . . offering, providing, and confirming the parent has reliable transportation to an alcohol and drug consultation; . . . completing walk-throughs of the parent's home, identifying and documenting health and safety hazards for the child in the parent's home; . . . providing the parent with contact information for Public Transportation . . . ; . . . and leaving messages with relatives asking them to ask the parent to contact DCS.

Based on our review of the record in this case, we hold that the evidence does not preponderate against the trial court's factual findings with respect to Mother's substantial noncompliance with permanency plans. Tenn. Code Ann. § 36-1-113(g)(2) allows a court to terminate a parent's rights when "[t]here has been substantial noncompliance by the parent . . . with the statement of responsibilities in a permanency plan." On the topic of substantial noncompliance, the Supreme Court has explained as follows:

Substantial noncompliance is not defined in the termination statute. The statute is clear, however, that noncompliance is not enough to justify termination of parental rights; the noncompliance must be substantial. *Black's Law Dictionary* defines "substantial" as "[o]f real worth and importance." *Black's Law Dictionary* 1428 (6th ed. 1990). *In the context of the requirements of a permanency plan, the real worth and importance of noncompliance should be measured by both the degree of noncompliance and the weight assigned to the requirement.*

*In re Valentine*, 79 S.W.3d at 548 (emphasis added).

9

DCS created three separate permanency plans, and all three essentially shared the same requirements. Mother was required to maintain appropriate housing, obtain a legal means of income, visit the Children regularly, refrain from illegal activity, avoid using medication not prescribed to her, and attend mental health appointments. The record reflects that Mother failed to meet these requirements, all of which bear on her ability to provide a stable home for the Children. Mother has not maintained appropriate housing, has not obtained a legal means of income, missed multiple visits with the Children, incurred new legal charges, tested positive for medications that were not prescribed to her, and has refused to submit to a psychological evaluation. In our view, Mother has failed to comply with a number of the requirements that are crucial for allowing the Children to be returned to her. Accordingly, we hold, as a matter of law, that the evidence clearly and convincingly demonstrates that Mother has not substantially complied with the permanency plans.

## C.

When reviewing persistence of conditions as a ground for terminating Mother's rights, the trial court held as follows:

> The children have been removed from the custody of their parents for more than six (6) months; the conditions which led to removal of the children from the home of [Mother] still exist and other conditions exist which in all probability would cause the children to be subject to further abuse and/or neglect, making it unlikely that the children could be returned to [Mother] in the near future; there is little likelihood that these conditions will be remedied at an early date so that the children can be returned to [Mother] in the near future; the continuation of the parent . . . and child relationship greatly diminishes the child's chance of an early integration into a stable and permanent home, and therefore, her parental rights should be terminated pursuant to Tenn. Code Ann. § 36-1-113(g)(3).

> The conditions that led to the removal of the children from the home of [Mother] . . . are the . . . mother's drug abuse and criminal activity.

> The conditions that prevent the children's return to the mother's home are her failure to comply with alcohol and drug treatment and continued abuse of drugs, continued criminal behavior, and her lack of stable housing and legal means of income.

10

The Department made reasonable efforts to assist the parents in remedying the conditions that necessitate foster care.

The evidence in this case does not preponderate against the trial court's factual findings on this ground. Tenn. Code Ann. § 36-1-113(g)(3) authorizes termination of parental rights when:

(A) The child has been removed from the home of the parent . . . by order of a court for a period of six (6) months and;

(i) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent(s) . . . still persist;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) . . . in the near future; and

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

Mother struggles with drug abuse. DCS has made repeated efforts to assist Mother with this problem, but Mother has neglected to do her part. The conditions leading to removal of the Children are Mother's drug abuse and criminal activity. Mother has not remedied the problems that led to the termination of her parental rights. She has tested positive for medications not prescribed to her and showed up for visitation with track marks on her arms. She has refused to attend drug and alcohol treatment. Mother has also incurred new legal charges. It is clear that Mother's drug abuse and criminal activity continue. We hold, as a matter of law, that the evidence clearly and convincingly establishes persistence of conditions as to Mother.

**D.**

Turning now to Father, the trial court stated the following with respect to the ground of substantial noncompliance with permanency plans:

11

[DCS] has failed to prove by clear and convincing evidence that [Father] has <u>not</u> substantially complied with the provisions of the permanency plans pursuant to Tenn. Code Ann. § 36-1-113(g)(2).

The initial permanency plan . . . requires [Father] to speak to the social worker at the prison to find out what parenting classes are offered to him and to complete any and all classes, submitting documentation of same to case manager when completed; maintain weekly contact with the children through letters to be delivered to the case manager; resolve pending criminal charges and be in compliance with rules of current or future probationary rules, and refrain from illegal activity. . . .

\*     \*     \*

The requirements in the permanency plans are all reasonably related to remedying the conditions that necessitate foster care . . . .

The Court does not find that [Father] has failed to substantially comply with the requirements in the permanency plan. Specifically, the Court finds that there is nothing [Father] could have done while incarcerated that he has not done . . . . The Court finds specifically that [Father] did complete over 385 hours of combined classes in the areas of career development and planning, carpentry level 1, parenting classes, psychology and self-awareness, and alcoholics anonymous. Additionally, [Father] works five days a week at the prison making clothing for the military, and he is saving money received from this employment.

We conclude, based on our review of the record, that the evidence does not preponderate against these findings by the trial court. The permanency plans required Father to complete classes while incarcerated and to maintain contact with the children. Father has completed a great number of classes during his time in jail and continues to attend classes. The record also indicates that Father made attempts to stay in contact with the Children but that there were some barriers to communicating with them. We hold, as a matter of law, that the evidence does not clearly and convincingly demonstrate that Father has failed to substantially comply with permanency plans. The trial court was correct in failing to terminate on the allegation of substantial noncompliance with the permanency plans.

**E.**

Tenn. Code Ann. § 36-1-113(g)(1) authorizes a court to terminate parental rights when abandonment occurs as defined by Tenn. Code Ann. § 36-1-102(1)(A). Abandonment by an incarcerated parent occurs when:

> (iv) A parent . . . is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent . . . has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and . . . has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.

Tenn. Code Ann. § 36-1-102(1)(A)(iv).

The trial court concluded the following with respect to the ground of conduct prior to incarceration that exhibits a wanton disregard by an incarcerated parent for the welfare of the Children:

> [Father] has been incarcerated during the four consecutive months prior to filing of this petition. [Father] has been incarcerated from 4-5-2010 to the present and is currently in Federal Prison in Talladega, Alabama.
>
> [Father] has been convicted of Sale of a Schedule II Controlled Substance in February 2009. In July 2009 and again in May 2010, he was found guilty of violating his probation. On 10-8-2010, [Father] pled guilty to theft of property over $1,000 and Possession of Oxycodone, A Schedule II Controlled Substance for Sale and Possession of Oxycodone, A Schedule II Controlled Substance for Delivery. [Father] testified that he retained an attorney and was advised to plead to the last of the charges in 2010 because they would run concurrent and he could not get approved for parole while a charge was pending. [Father] maintains his innocence in regards to the conduct which ultimately resulted in his present incarceration. [Father] was employed at the time . . . [and] had custody of his daughter . . . . This Court finds [Father's] testimony highly credible, especially given the evidence submitted showing the courses he completed while

13

incarcerated. He is currently finishing the last of his sentence, and he has shown a strong desire to return to society as a productive citizen.

Therefore, the Court fails to find that [Father] has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the children pursuant to Tenn. Code Ann. §[§] 36-1-113(g)(1) and Tenn. [Code Ann.] 36-1-102(1)(A)(iv).

On this ground, we hold that the evidence preponderates against the trial court's finding that Father did not engage in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the Children. Rather than addressing Father's conduct prior to incarceration, the trial court focused, instead, on Father's conduct while he has been incarcerated. The court's findings that "[Father's] testimony was highly credible, especially given the evidence submitted showing the courses he has completed while incarcerated . . . [and] has shown a strong desire to return to society as a productive citizen[]" do not properly analyze the ground of abandonment by an incarcerated parent. The conduct we must analyze is the conduct prior to incarceration.

"Parental conduct exhibiting wanton disregard for a child's welfare may occur at any time prior to incarceration[.]" *In re Kason C.*, No. M2013-02624-COA-R3-PT, 2014 WL 2768003, at *5 (Tenn. Ct. App., filed June 17, 2014) (citing *State of Tenn., Dept. of Children's Servs. v. Hood*, 338 S.W.3d 917, 926 (Tenn. Ct. App. 2009)). A parent's incarceration acts as a "triggering mechanism that allows the court to take a closer look at the child's situation to determine whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child." *In re Audrey S.*, 182 S.W.3d at 866.

Tenn. Code Ann. § 36-1-102(1)(A)(iv) does not explicitly define wanton disregard, though "[w]e have repeatedly held that probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *In re Audrey S.*, 182 S.W.3d at 867-68 (citing *State Dep't of Children's Servs. v. J.M.F.*, No. E2003-03081-COA-R3-PT, 2005 WL 94465, at *7-8 (Tenn. Ct. App., filed Jan. 11, 2005), *perm. app. denied* (Tenn. Mar. 21, 2005)).

In this case, Father's conduct prior to incarceration demonstrates a pattern of conduct that exhibits a wanton disregard for the welfare of the Children. In 2009, Father was on probation for a prior drug charge. On July 6, 2009, his probation was partially revoked when he was found guilty of violating his probation due to a battery charge

against him. Father's probation was later fully revoked on May 7, 2010 after he pleaded guilty to a violation of community corrections. Additionally, Father pleaded guilty to theft of property over $1,000 that occurred on January 25, 2010.

This pattern continued in March 2010 when officers arrested Father for driving on a suspended license. After Father bonded out of jail, officers arrested Father for the possession of Oxycodone, a schedule II controlled substance for sale. Father pleaded guilty to this offense but now claims that his attorney misled him to plead guilty to that charge. Father's untimely assertion of his innocence does not relieve him of this charge or discharge the actions that led to the charge. "A plea of guilty . . . is generally not conclusive on the issues in a subsequent civil action, but is competent evidence as an admission against interest." *Grange Mut. Cas. Co. v. Walker*, 652 S.W.2d 908, 910 (Tenn. Ct. App. 1983) (internal citations omitted). Thus, while it is not conclusive on the issue of guilt, we find the guilty plea as competent evidence that Father continued his pattern of behavior that exhibits a wanton disregard for the welfare of the Children. We will not relitigate Father's 2010 guilty plea. We are not trying him for the offense, but rather are looking at his pattern of conduct that demonstrates a wanton disregard for the welfare of the Children. Subsequent to this charge, Federal authorities indicted Father for conspiracy to transport and delivery and trafficking of Oxycodone, Alprazolam, and Hydrocodone. Father also pleaded guilty to those charges.

"Our courts have consistently held that an incarcerated parent who has multiple drug offenses and wastes the opportunity to rehabilitate themselves by continuing to abuse drugs, resulting in revocation of their parole and reincarceration, constitutes abandonment of the child, and demonstrates a wanton disregard for the welfare of the child." *In re DNG*, No. M2003-02810-COA-R3-PT, 2004 WL 2314534, at *2 (Tenn. Ct. App., filed Oct. 13, 2004) (citing *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000)). The above incidents demonstrate a pattern. The record makes it clear that Father has engaged in a course of conduct in which he was involved with drugs and other violations of the law. Father's numerous drug charges and probation violations demonstrate that he has engaged in a pattern of conduct. This pattern has caused Father to be incarcerated continuously since April 2010. Prior to that, Father was in and out of jail. Father's conduct prior to incarceration exhibits a clear wanton disregard for the welfare of the Children.

For a child in utero, we primarily have found wanton disregard where a parent, after learning of the pregnancy, commits the crime for which he or she is subsequently incarcerated. *In re Jamazin H.M.*, 2014 WL 2442548, at *9; *In re Maria B.S.*, No. E2012-01295-COA-R3-PT, 2013 WL 1304616, at *1 (Tenn. Ct. App., filed Apr. 1, 2013). Here, the conduct that led to Father's most recent incarceration occurred on March 9, 2010. Child 1 was born on February 10, 2009, and Child 2 was born on July 9, 2010. Thus, while Father's pattern of conduct began prior to the Children's birth, the conduct extends beyond the time period that Father would have been aware that Child 2

had been conceived. Father testified that, when he was incarcerated on April 5, 2010, Mother was pregnant with Child 2. Thus, when Father committed the offenses prior to his current incarceration, he had learned that Mother was pregnant with Child 2. Accordingly, his conduct exhibiting a wanton disregard for the welfare of the Children extends to all relevant periods in this case. We hold, as a matter of law, that Father engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the Children.

### F.

As to termination of Father's parental rights on putative father grounds, the trial court addressed the issue as follows:

> The Court . . . refuses to terminate [Father]'s parental rights to [Child 2] on the grounds that he does not meet the definition of "legal parent" found at Tenn. Code Ann. § 36-1-102(28), which is controlling law for this ground for termination of parental rights. Specifically, the Court finds that [Father] has never denied being the child's father and testified that he requested DNA testing in an email to the Department, after receiving no response to previous emails, which he was instructed to send by the Department. There is no reliable indication in the record that he was ever provided instructions on how to get on the Putative Father Registry, nor that he was even aware of it.

We hold that the evidence does not preponderate against the trial court's factual findings as to this ground. Tenn. Code Ann. § 36-1-113(g)(9)(iv) allows a court to terminate the rights of a putative father if "[t]he person has failed to manifest an ability and willingness to assume legal and physical custody of the child[.]" The evidence does not demonstrate that Father was aware of the Putative Father Registry or had access to the internet to register as Child 2's putative father. We hold, as a matter of law, that the evidence does not clearly and convincingly demonstrate that Father has failed to manifest an ability and willingness to assume legal and physical custody of Child 2. The trial court was correct in failing to terminate Father's rights on this ground.

### VI.

Since we have found statutory grounds warranting the termination of Mother's and Father's parental rights, we now focus on whether termination is in the Children's best interest. When considering the issue of "best interest," we are guided by the following statutory factors set forth in Tenn. Code Ann. § 36-1-113(i), which provides:

In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:

(1)  Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interests to be in the home of the parent or guardian;

(2)  Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3)  Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4)  Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5)  The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6)  Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7)  Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8)  Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9)  Whether the parent or guardian has paid child support

consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

"The above list is not exhaustive[,] and there is no requirement that all of the factors must be present before a trial court can determine that termination of parental rights is in a child's best interest." *State Dep't of Children's Servs. v. B.J.N.*, 242 S.W.3d 491, 502 (Tenn. Ct. App. 2007) (citing *State Dep't of Children's Servs. v. P.M.T.*, No. E2006-00057-COA-R3-PT, 2006 WL 2644373, at *9 (Tenn. Ct. App., filed Sept. 15, 2006)). In addition, "[t]he child's best interest must be viewed from the child's, rather than the parent's, perspective." *In re Marr*, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005) (citing *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004)).

## A.

In the present action, the trial court held that DCS has proven by clear and convincing evidence that termination of Mother's rights is in the Children's best interest. The trial court made the following factual findings when analyzing the best interest of the Children:

> [Mother] has not made an adjustment of circumstances, conduct or conditions as to make it safe and in the children's best interest to be in the home of the mother. . . .
>
> [Mother] has failed to effect a lasting adjustment after reasonable efforts by available social agencies for such duration of time that lasting adjustment does not reasonably appear possible. . . .
>
> [Mother's] use of alcohol or controlled substances renders her consistently unable to care for the children on a safe and stable manner. . . .
>
> \*　　　\*　　　\*
>
> [Mother] continues to make lifestyle choices that prevent her from being able to parent the children or to provide a home for the children.

On appeal, Mother notes that she has visited the Children regularly and maintained contact with them. She also argues that she has a meaningful relationship with the Children and that terminating her rights would have a negative impact on the Children. Mother argues that "a change in caretakers may not have a negative impact on the children."

We are not persuaded by Mother's arguments. While maintaining contact with the Children was a productive step in building a relationship with the Children, we find that Mother has failed to make the adjustments that would make it safe for the Children to return to her home. Mother has continued to abuse drugs and failed to take steps to demonstrate her willingness to make the appropriate changes needed to render her home safe. The record shows that Mother lacks stable housing, continues to have issues with drugs and alcohol, and has failed to address her mental health issues. The Children have developed a relationship with their foster family, and changing caretakers would likely have a negative effect on the Children's emotional and psychological condition. We hold, as a matter of law, that the trial court was correct in holding that there is clear and convincing evidence that termination of Mother's parental rights is in the Children's best interest.

**B.**

In regard to Father, the trial court addressed the Children's best interest as follows:

> As the Court failed to find that [DCS] has proven by clear and convincing evidence that grounds for termination of the parental rights of [Father] exist, the Court is not required to make findings regarding whether the termination of parental rights of [Father] is in the best interest of the children.

Because we hold, as a matter of law, that DCS has proven by clear and convincing evidence that a ground for termination of Father's parental rights exists, we must now address the issue of whether termination of his rights is in the best interest of the Children. Tenn. Code Ann. § 36-1-113(c)(2). The record contains all facts necessary to make this determination. We are guided by the same factors discussed above. On appeal, Father argues that "[n]o evidence was presented that child support was ever ordered by the trial court, such that [that] factor . . . should be weighted either way . . . ." Father asserts that he pled with the trial court not to terminate his rights because "he had been a good caregiver before incarceration, had a home, had completed classes and was willing to support the children."

The record before us presents an individual who has been continually in violation of the law and has failed to abide by the terms of his probation. Through the course of Father's criminal history, Father has demonstrated that he cannot provide a safe home for the Children. While he has attended classes during his incarceration, these classes do not make up for the fact that Father refused to make adjustments to his circumstance, conduct, or conditions to provide a safe home for the Children. Father has not had regular contact with the Children. He has been incarcerated for a majority of Child 1's life and all of Child 2's life, making it impossible for him to establish a meaningful

relationship with the Children. Placing the Children with Father would be akin to placing them with a stranger. The Children have been with a foster family for years, and removing them from that family now and placing them with Father would likely have a negative effect emotionally and psychologically on the Children. We hold, as a matter of law, that there is clear and convincing evidence that termination of Father's parental rights is in the best interest of the Children.

## VII.

The judgment of the trial court finding that DCS failed to prove a ground to terminate Father's rights is reversed. The result of our reversal is that Father's parental rights are hereby terminated on the sole ground of conduct prior to incarceration exhibiting "wanton disregard for the welfare of the child." The judgment of the trial court terminating Mother's parental rights is affirmed. The costs on appeal are assessed one-half to the appellee, M.L.F, and one-half to the appellee, H.W.B. This case is remanded to the trial court for enforcement of the trial court's judgment as changed by us and for the collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE